## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **CATHERINE WESTPHAL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:16-cv-00059-JEO** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Catherine Westphal brings this action pursuant to Section 205(g) of

the Social Security Act (42 U.S.C. § 405(g)), seeking review of the final decision

of the Acting Commissioner of Social Security ("Commissioner")[1] denying her

application for disability insurance benefits. (Doc. 1).[2] The case has been

assigned to the undersigned United States Magistrate Judge pursuant to this court's

general order of reference. The parties have consented to the jurisdiction of this

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See
https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action
instituted in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in such office."
Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil
Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case
caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). ___" are to the document numbers assigned by the Clerk of the
Court to the pleadings, motions, and other materials in the court file, as reflected on the docket
sheet in the court's Case Management/ Electronic Case Files (CM/ECF) system.

court for disposition of the matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV.

P. 73(a). Upon review of the record and the relevant law, the undersigned finds

that the Administrative Law Judge ("ALJ") properly developed the record and was

correct in his decision that Plaintiff did not have a medically determinable

impairment to qualify for disability insurance benefits. Upon consideration, the

court finds that the Commissioner is due to be affirmed.

## I. PROCEDURAL HISTORY

On March 19, 2012, Westphal protectively filed an application for disability

insurance benefits and supplement security income benefits, alleging disability

beginning on March 10, 2012. (R. 135-42, 167).[3] Westphal was initially denied

benefits on June 1, 2012 (R. 69-73), and requested a hearing before an ALJ on July

20, 2012. (R. 84-86). A hearing was held on January 15, 2014. (R. 25-45). The

ALJ denied Westphal's claim on April 11, 2014. (R. 10-24). The Appeals

Council denied review. (R. 1-3). Westphal then filed this action under § 405(g).

(Doc. 1).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly

circumscribed. The function of the court is to determine whether the

Commissioner's decision is supported by substantial evidence and whether proper

---

[3] References herein to "R.___" are to the page numbers of the administrative record, which is located at documents 5-1 through 5-11.

legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a sever medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)).  Plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Id.*

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

## IV. FINDINGS OF THE ALJ

Plaintiff was 24 years old on the date of the ALJ's decision. (R. 20, 167). Plaintiff has a high school education and past work as a front desk clerk and cashier. (R. 41-42, 172). Plaintiff alleges that she was disabled due to a broken left foot, broken left ankle, right femur operation, several broken ribs, and infection in the mouth. (R. 171). At her hearing, Plaintiff requested that she be treated as a "closed period" claimant for the period from February 10, 2012 to December 2013.[5] (R. 13).

Plaintiff associates many of her alleged problems to a motor vehicle accident on March 10, 2012, but the evidence indicates that she recovered from her accident within a short period of time and did not experience any long-lasting functional limitations. Because of the accident, Plaintiff experienced fractures in her right leg and left foot. (R. 226-28, 243-49, 252-53). There was no evidence of trauma in the chest, abdomen, neck, or pelvis. (R. 250-51). Plaintiff had surgery to repair a fracture in her right leg, and was discharged from the hospital on March 15, 2012. (R. 226-27). At the beginning of April, Plaintiff underwent surgery to repair the fractures in her left foot. (R. 233-34, 261-62). Two-weeks later, Dr. Ashish Shah

---

[5] "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Typically, both the disability decision and the cessation decision are rendered in the same document." *Pickett v. Bowen*, 833 F.2d 288, 289, n.1 (11th Cir. 1987).

stated that Plaintiff was doing well post-operatively and that he would place Plaintiff in a non-weight bearing cast for four weeks. (R. 236).

In May 2012, Dr. Zakir Khan performed a consultative examination, and found Plaintiff had the ability to sit, lift, carry, handle objects, hear, speak, and travel but that standing and walking would be difficult until treatment of her left foot injury was completed. (R. 276). In June 2012, Dr. Robert Estock, a state agency consultant, found that Plaintiff had no severe mental limitations or restrictions in mental functioning. (R. 51). In September 2012, Dr. Shah performed surgery to remove the hardware in Plaintiff's left foot. (R. 291-93, 311-12).

Plaintiff received periodic treatment from Dr. James Tuck in 2012 and 2013. (R. 546-60). Plaintiff sought medication refills for attention deficit disorder ("ADD"), but did not report any ongoing psychological symptoms. (R. 540-60). Plaintiff continued to take college courses during this time. (R. 33).

In July 2013, Dr. Tuck examined Plaintiff and found she had a normal neurological function, normal sensation and coordination in all extremities, and normal range of motion without pain in both lower extremities. (R. 550). Dr. Tuck noted Plaintiff was alert and oriented, could recall recent and remote events, had an appropriate mood and affect, and had an intact fund of knowledge. (*Id.*) In

September 2013, Dr. Tuck found Plaintiff maintained normal neurological, musculoskeletal, and psychological examinations. (R. 546-47).

In evaluating Plaintiff's application, the ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. (R. 15-20). The ALJ first found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (R. 15). After reviewing the medical evidence and testimony presented at the administrative hearing, the ALJ determined that "although the records reveal [Plaintiff] suffered severe impairments in a motor vehicle accident in March 2012, the records do not satisfy the requirement that an impairment must last twelve months, particularly in light of her lack of treatment from September 2012 until July 2013." (R. 19). Although Plaintiff had seen Dr. Tuck several times between September 2012 and July 2013, the ALJ found that the record does not reveal any further complications or treatment for her right leg or left foot, and Plaintiff experienced normal neurological and musculoskeletal examinations. (R. 19, 546-60).

## V. DISCUSSION

Plaintiff alleges the ALJ committed the following errors: First, the ALJ did not obtain a December 2013 treatment note from Dr. Shah that Plaintiff's attorney mentioned during the hearing. (Doc. 7 at 6-7). Second, the ALJ did not order a second physical consultative examination to be performed by Dr. Khan, whose

initial assessment was less than three months following Plaintiff's injury. (*Id.* at 7). Third, the ALJ failed in his duty to fully develop the record because he "asked no questions of Plaintiff pertaining to [her] mental impairments, nor did he undertake any other development of the record regarding those impairments." *Id.* Taken together, Plaintiff alleges this shows that the ALJ failed to develop a full and fair record, requiring remand. (*Id*. at 8-9).

As stated above, the Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Plaintiff has the burden of establishing the existence of a disability under the first four steps and is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Both the impairment(s) and the inability to work must last for at least twelve consecutive months. *Barnhart v. Walton*, 535 U.S. 212, 217-20 (2002).

In determining whether a claimant is disabled, an ALJ considers the medical opinions in the record together with the other relevant evidence. 20 C.F.R. § 404.1527(c). The ALJ evaluates "every medical opinion" regardless of its source.

*Id.* In deciding the weight to give to a medical opinion, the ALJ is to consider (1) whether the opinion's source examined the claimant; (2) whether the source has a treating relationship with the claimant; (3) the relevant evidence supporting the opinion, particularly medical signs and laboratory findings; (4) the extent to which the opinion is consistent with the record as a whole; and (5) whether the opinion is related to the source's specialization. *Id.* The ALJ need not explicitly mention each of these factors in his written decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Weighing the evidence is the ALJ's duty, and the court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

### 1. Absence of Dr. Shah's December 2013 Treatment Note

Plaintiff initially claims that the ALJ erred in failing to obtain documentation of her December 20, 2013 visit with Dr. Shah, which purportedly shows that he had recommended additional surgery to fuse affected bones in her left foot. (Doc. 7 at 6). Specifically, she says the ALJ made no effort to obtain any of her records that would "substantiate the existence of a medically determinable impairment." (*Id.*)

In *Norton v. Comm'r of Soc. Sec.*, 607 F. App'x 913, 915 (11th Cir. 2005),

the Eleventh Circuit set forth the relevant guiding principles:

> "It is well-established that the ALJ has a basic duty to develop a full
> and fair record." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).
> Consequently, the ALJ must "'scrupulously and conscientiously probe
> into, inquire of, and explore for all relevant facts.'" *Cowart v.
> Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoting *Cox v.
> Califano*, 587 F.2d 988, 991 (9th Cir. 1978)). The ALJ must consider
> all of the impairment evidence presented at the hearing, stating the
> weight accorded to each item and the reasons for accepting or
> rejecting the evidence. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th
> Cir. 1990).

Additionally, the court recognizes that an ALJ is not required to discuss every

piece of evidence in detail. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

2005) (stating "there is no rigid requirement that the ALJ specifically refer to every

piece of evidence in his decision, so long as the ALJ's decision, … , is not a broad

rejection which is 'not enough to enable [the district court or this Court] to

conclude that [the ALJ] considered her medical condition as a whole.'" (quoting

*Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotation omitted)).

The test for determining whether an ALJ committed error in failing to develop a

record requires "a showing of prejudice before it is found that the claimant's right

to due process has been violated to such a degree that the case must be remanded

to the Secretary for further development of the record." *Graham v. Apfel,* 129 F.3d

1420, 1423 (11th Cir. 1997). The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice." *Id.*

During the hearing, the ALJ afforded Plaintiff 30 days to submit additional medical records, including Dr. Shah's note from December 20, 2013. (R. 29-31). As best as the court can discern, the additional medical information was never submitted.

Plaintiff has failed to demonstrate how the ALJ's 30-day extension was "clearly prejudicial" to resolving any evidentiary gaps to substantiate the existence of a medically determinable impairment in her case. The burden is on Plaintiff to produce evidence to support her claim, and the ALJ met his basic duty to fully and fairly develop the record by agreeing to hold the matter open for 30 days to receive and examine any assessment and treatment records from Dr. Shah. *See* 20 C.F.R. § 404.950(d). (R. 29). Plaintiff's counsel stated that he had already ordered the records. He did not request any assistance from the ALJ to obtain the records. (R. 30). Counsel did not ask for any further extensions and he did not submit anything additional for the record. The court finds that the ALJ met his obligation by agreeing to keep the record open for the additional evidence and because the record evidence supports his conclusion that Plaintiff did not suffer from a medically determinable impairment or impairments entitling her to benefits.

Moreover, Plaintiff has failed to establish how this single treatment note from 21 months after the initial accident would have changed the ALJ's determination that Plaintiff did not have a medically determinable impairment that lasted 12 months. *Graham v. Apfel*, 129 F.3d at 1423 (holding medical records, along with the ALJ's questioning, were sufficient for the ALJ to evaluate Plaintiff's impairments and Plaintiff failed to point to anything in the record to demonstrate prejudice due to a gap in evidence which may have warranted additional medical evidence). The purpose of the December treatment note from Dr. Shah purportedly was to provide evidence that Plaintiff's impairment required additional surgery. (R. 30). In his decision, the ALJ noted that Plaintiff requested "closed period" consideration from February 10, 2012 to December 2013. (R. 13). There was sufficient medical testimony already in the record for the ALJ to evaluate Plaintiff's physical injuries. And that is exactly what he did. For these reasons, Plaintiff's claim that the ALJ failed to fully develop the record regarding Dr. Shah's December 2013 treatment note fails to demonstrate the requisite prejudice to warrant relief.

### 2. The Failure to Order a Second Physical Consultative Examination

Plaintiff next contends that the ALJ failed to fully develop the record when he discounted the findings and opinions of Dr. Khan's May 29, 2012 examination and when he did not schedule a second consultative examination to address the

short-coming he identified.  (Doc. 7 at 7).  This contention fails to establish error on the part of the Commissioner for a number of reasons.  First, the ALJ did not discount the findings of Dr. Khan.  (R. 18).  Rather, the ALJ stated that "Dr. Khan's assessment is accorded some weight; however, his assessment was less than three months following the claimant's injury."  (*Id.*)  20 C.F.R. §§ 404.1527(c) affords the ALJ discretion when evaluating the weight to be given to medical opinions contextualized to the nature of the diagnosis.  The ALJ concluded that Dr. Khan's evaluation, as well as the other evidence, failed to demonstrate that Plaintiff suffered from a medically determinable impairment that lasted twelve months.  (R. 17-19).  Specifically as to Dr. Khan, the record provides:

> Examination revealed normal range of motion of all joints of the upper and right lower extremities with no erythema, warmth, swelling, or joint deformity.  Left hip extension, internal rotation, and external rotation were normal, and left hip flexion was decreased as well as left knee and ankle range of motion.  Dexterity and grip strength of the hands was normal.  Motor and sensory examination was intact in all extremities, and deep tendon reflexes were equal and symmetrical bilaterally.  She was currently using a walker and wearing an orthopedic ankle boot.  She was unable to test tandem, heel, or toe walking due to partial weight bearing status of the left lower limb.  Dr. Kahn diagnosed attention deficit disorder, post traumatic injury to the right femur treated with open reduction and internal fixation, and complex mid foot fracture dislocation currently being surgically treated.  She demonstrated an ability to sit, lift, carry, handle objects, hear, speak, and travel; and standing and walking were reported to presently be difficult for her and would be until treatment of the left foot injury was final…

(R. 17-18).

Second, the decision to obtain a second consultative examination is discretionary and is required only where the record is inconsistent or insufficient. *See* 20 C.F.R. §§ 404.1519a(a), 416.920b(c). The Eleventh Circuit has explained that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Plaintiff has failed to demonstrate how a second consultative examination was necessary for the ALJ to make an informed decision or to fully develop the record. The court finds that the record contained sufficient evidence to support the ALJ's findings, including two examinations with Dr. Tuck during the relevant period (July and September 2013) that showed normal findings in the affected area. (R. 546-47 & 549-51). Thus, the Commissioner was not required to order a second physical consultative examination.

### 3. Attention Deficit Disorder ("ADD") and Obsessive Compulsive Disorder ("OCD") Diagnosis

Plaintiff further argues that her diagnosis of ADD and OCD required the ALJ to obtain a consultative examination regarding her mental impairments, and that the lack of a such an examination represents a failure to properly follow 42 U.S.C. § 421(h). (Doc. 7 at 8 (citing *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988)). Plaintiff argues that despite the evidence of her mental impairments, the ALJ asked no questions of her concerning the diagnosis, nor did he undertake

any other effort to develop the record regarding the impairments. (Doc. 7 at 7). She then states that "[a]t the very least, the ALJ should have undertaken at least one of the steps prescribed by 20 C.F.R. § 404.1520b(b) and (c)."[6] She concludes that the ALJ simply relied upon the absence of evidence to issue a decision of nondisability." (Doc. 7 at 8). This, she asserts, is "reversible error." (*Id*.) The Commissioner responds: (1) Plaintiff's reliance on *McCall* is misplaced; (2) the language of § 421(h) applies to initial determinations; (3) § 421(h)(1) does not require a consultative examination; and (4) Plaintiff has not met her burden of alleging a mental health issue. (Doc. 8 at 13-16).

---

[6] Although Plaintiff cites to 20 C.F.R. § 404.1520b(b) and (c) (*see* doc.7 at 8), the language can be found in § 404.1520b(b)(2)(i)-(iv), which provides, in pertinent part:

> We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.

> (i)      We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

> (ii)     We may request additional existing evidence;

> (iii)    We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or

> (iv)     We may ask you or others for more information.

Section 421(h)(1) states: "An initial determination … shall not be made until the Commissioner of Social Security has made every reasonable effort to ensure … in any case where there is evidence which indicates the existence of a mental impairment, that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." In *McCall*, the Eleventh Circuit remanded the case to the lower court for further remand to the Secretary for additional consideration of whether McCall's obesity was a consequence of failing to comply with a prescribed course of treatment. 846 F.2d at 1319. In remanding the case, the court also addressed McCall's challenge that the Secretary improperly concluded that no mental or emotional basis existed for her inability to work since there was no doctor's report in the record mentioning a mental or emotional problem. *Id.* The court stated:

> In the instant case, plaintiff's physicians have at times suggested that she might be suffering from a psychological condition. They have informed her that she suffered from "anxiety and nerves and a lot of stress," they have commented that she was "somewhat apprehensive," and they have prescribed Valium for her anxiety.

> Such evidence may not have been sufficient to require the ALJ to request a consultative psychological examination under this Court's decision in *Murray v. Heckler,* 737 F.2d 934, 935 (11th Cir.1984). *Murray,* however, was decided before the effective date of Section 8(a) of the Social Security Disability Benefits Reform Act of 1984, which appears to require a consultative examination on less evidence than may have been required previously. The ALJ's decision was dated September 30, 1985. This section, which became effective in

1984, specifically provides that "in any case where there is evidence which indicates the existence of a mental impairment" the Secretary may determine that the claimant is not under a disability "only if the Secretary has made every reasonable effort" to obtain the opinion of "a qualified psychiatrist or psychologist." 42 U.S.C.A. § 421(h); *see generally* H.R. Rep. No. 98–618, 98th Cong., 2d Sess., *reprinted in* 1984 *U.S. Code Cong. & Admin. News* 3038.  Along with her own testimony of mental problems, the suggestions made by her treating physicians might well be enough to require the appointment of a psychiatrist or psychologist under the requirements of section 421(h). Certainly, since the case has to be remanded for proper handling of the overweight problem, the applicability of section 421(h) must be carefully considered.  The need for such a consultation would be especially important if the failure to lose weight under a prescribed course of treatment has a psychological overlay.

*McCall*, 846 F.2d at 1320.

The Commissioner specifically asserts the following:

First, the court in *McCall* never explicitly found the ALJ erred by not ordering a consultative examination; instead the court remanded on another issue while stating 42 U.S.C. § 421(h) "appears to" require a consultative examination in some cases.  *See McCall,* 846 F.2d at 1320 ("Certainly, since the case has to be remanded for proper handling of the overweight problem, the applicability of section 421(h) must be carefully considered.").  Second, the language of § 421(h) indicates that it applies to initial determinations and not necessarily to decisions made by an ALJ.  *See* 42 U.S.C. § 421(h) ("An initial determination . . . that an individual is not under a disability . . ."); *see also Sneed v. Barnhart*, 214 Fed. App'x 883, 886 (11th Cir. 2006) (questioning the *McCall* court's interpretation of § 421(h)).  Third, § 421(h)(1) does not require a consultative examination but that "a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment."  42 U.S.C. § 421(h)(1).

(Doc. 8 at 13).

The court finds Plaintiff is not entitled to relief for multiple reasons. First, the court agrees with the Commissioner that § 421(h) applies to initial determinations and not necessarily to decisions made by an ALJ. *See* 42 U.S.C. § 421(h) ("An initial determination . . . that an individual is not under a disability . . ."). *See also Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006) (noting that "[t]he Third Circuit has held that the normal requirement to order a psychiatric consult pursuant to § 421(h) does not apply to … cases heard by an ALJ. *Plummer v. Apfel,* 186 F.3d 422, 433 (3d Cir. 1999) (holding that the § 421(h) consultation requirement applies only to cases falling under § 421(a), (c), (g), (i) at the initial and reconsideration levels)."). Additionally, "an ALJ has regulatory flexibility to evaluate mental impairments to determine their severity." *Sneed*, 214 F. App'x at 886 (citing *Plummer*, 186 F.3d at 433; *see also* 20 C.F.R. § 404.1520a (evaluation of mental impairments)).

Second, the ALJ complied with the requirements of § 421(h) because Dr. Robert Estock, a state agency psychological consultant, reviewed the record and provided an opinion regarding Plaintiff's mental impairments and functioning. (*See* R. 18, 51). The opinion of Dr. Estock, as a non-examining state agency medical consultant, is entitled to substantial consideration as a relevant, expert opinion. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians,

psychologists, and other medical specialists who are also experts in Social Security disability evaluation."). The Commissioner correctly points out that Plaintiff cites no authority for the proposition that the ALJ's reliance on Dr. Estock's opinion violated the statute. The undersigned notes, however, that other courts have concluded that an ALJ's reliance on a state agency medical consultant's review is appropriate to satisfy any requirement imposed by § 421(h)(1) even where the ALJ did not order a consultative psychological examination. *See, e.g., Parker v. Colvin*, No. 3:15cv269-WC, 2016 WL 1092237, at *4 (M.D. Ala. Mar. 21, 2016) ("The record before the ALJ in this case was sufficient to permit the ALJ to assess the severity of Plaintiff's OCD and dysthymia without the need for ordering a consultative examination by a qualified psychiatrist or psychologist."); *Harris v. Colvin*, No. 13-481-KD-B, 2014 WL 584420, at *10 (S.D. Ala. Nov. 12, 2014) ("In this case, Plaintiff is correct that the ALJ did not order a consultative mental examination. However, the record does contain the opinion of State Agency psychologist Dr. Joanna Koulianos, Ph.D., who reviewed Plaintiff's medical records and completed a Psychiatric Review Technique and a Mental RFC Assessment. Thus it is clear that the ALJ complied with 42 U.S.C. § 421(h) in having Dr. Koulianos conduct a review of the medical records and compete a Psychiatric Review Technique[.]").

Third, Plaintiff's argument fails because she does not meet her burden of alleging a mental health issue, and there was substantial evidence in the record to validate the ALJ's holding.  Plaintiff has the burden of alleging a disability due to her mental or medical condition either when she files her application or at her hearing.  *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010).  In *Robinson*, the court stated that the ALJ "had no duty to consider Robinson's C[hronic] F[atigue] S[yndrome] diagnosis because Robinson… did not allege that she was disabled due to CFS either when she filed her claim or at her May 2006 hearing."  (*Id.*).  *See also Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (holding that the claimant's failure to raise a mental health issue as a basis for disability at the hearing "alone could dispose of his claim" because an administrative law judge is "under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)).  Here, Plaintiff did not allege a disability based on ADD or OCD. Specifically, she did not allege a mental disability in her application, in her Adult Function Report, or at the hearing before the ALJ.  (*See* R. 25-45, 171, 189-97). To the contrary, at one point during the hearing, Plaintiff's attorney states, "Judge, this, this case is really, I believe, dependent upon Ms. Westphal's ability to sit and stand."  (R. 29).  Plaintiff did not mention any mental disability during questioning

at the hearing. She also acknowledged to the ALJ that she was able to complete college courses during a portion of the period of her impairment (Summer 2013). (R. 33). Thus, there was no obligation on the ALJ to further consider Plaintiff's mental status in determining whether she was disabled.

Lastly, the Eleventh Circuit has held that although an "administrative law judge has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269. In *Ingram*, the Eleventh Circuit determined that the ALJ did not err in failing to further develop the record regarding the claimant's mental capacity by ordering a consultative mental examination because the record, including evidence that the claimant's "depression was alleviated by medication," was sufficient for the ALJ to determine the extent of the claimant's mental impairments. (*Id*.) Here, as already discussed, the ALJ complied with the requirements of § 421(h)(1) because Dr. Estock, a state agency psychological consultant, reviewed the medical evidence and provided an opinion regarding Plaintiff's mental impairments and functioning. (R. 18, 51).

To the extent Plaintiff notes that both Dr. Khan and Dr. Tuck diagnosed her as suffering from ADD and OCD (doc. 7 at 7), those observations are insufficient to warrant further evaluation under the circumstances. For instance, Dr. Khan

simply stated in his assessment that Plaintiff's medical problems include ADD. (R. 276). Dr. Tuck's treatment records show Plaintiff was diagnosed with ADD and OCD. The records show that in June 2012 Plaintiff was prescribed medication for ADD. (R. 18). She was continued on her medication through February 2014. (R. 18, 561). On November 5, 2012, she was diagnosed with OCD. (R. 18, 556). On her last noted visit – September 6, 2013 – she reported an inability to concentrate, but it improved with Adderall. (R. 18, 546). While this information demonstrates a medical diagnosis, it is insufficient to require the ALJ to order further testing and evaluation. This is particularly the situation in view of her testimony that she was taking college courses during the Summer of 2013 and Dr. Estock's review and assessment finding that Plaintiff's ADD/ADHD was non-severe. (*See* R. 50-51).

## VI. CONCLUSION

In light of the substantial evidence in the record, the ALJ had the necessary information to determine Plaintiff's impairments, her residual functional capacity, and her ability to work. Moreover, Plaintiff has not shown that she suffered prejudice as a result of any failure of the ALJ to perform further fact-finding. There is no evidence the ALJ's decision would have changed in light of any additional information. Consequently, the ALJ did not err by not requesting an additional consultative examination and by not asking questions to Plaintiff

concerning her ADD and OCD diagnosis.  In sum, the court finds no error in the determinations of the ALJ.  For the foregoing reasons, the determination of the Commissioner is due to be affirmed.  An order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DATED,** this 17th day of May, 2017.

_____

**JOHN E. OTT**
Chief United States Magistrate Judge